FILED

**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**

**STATE OF LOUISIANA**

2022 AUG -4  PM 2: 01

NO. _2022-6964_    **SECTION**

CIVIL DIVISION
DISTRICT **SECTION 6**

**LLOYD BRIDGES, SR., ET AL.**

**VERSUS**

**EAGLE, INC., ET AL.**

FILED: _____

**DEPUTY CLERK**

**PETITION FOR DAMAGES**

TO THE HONORABLE CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
STATE OF LOUISIANA, AND THE JUDGES THEREOF:

CIVIL DISTRICT COURT
402 CIVIL COURTS BUILDING
421 LOYOLA AVENUE - ROOM 402
NEW ORLEANS, LA 70112

1.    Made Decedent herein is:

      **LLOYD BRIDGES, SR.**, an adult resident of the State of Louisiana and surviving spouse

of decedent, Sandra Seals Bridges, who resides at 39 Davenport St., Waggaman, Louisiana.

Receipt Date     8/4/2022 2:06:03 PM
Receipt Number   902894

      **LLOYD BRIDGES, JR.**, an adult resident of the State of Louisiana and surviving son of

Register         CDC Cash Register 1

decedent, Sandra Seals Bridges, who resides in Jefferson Parish, Louisiana.

Case Number      2022-06964

      **LEONARD BRIDGES, II.**, an adult resident of the State of Louisiana and surviving son

Payment Total    $3553.50
Amount Received  $3553.50

of decedent, Sandra Seals Bridges, who resides in Jefferson Parish, Louisiana.

Cash Due         $ 0.00
Over Payment     $ 0.00

      **DARREN BRIDGES.**, an adult resident of the State of Louisiana and surviving son of

Payment Transaction List
Credit Card # 05706P $3553.50

decedent, Sandra Seals Bridges, who resides in Calcasieu Parish, Louisiana.

      Plaintiffs assert their individual wrongful death actions as the heirs of the decedent and as

| Item | Charged | Paid | Bal |
|------|---------|------|-----|
| Petition - ASBESTOS CASE 91-18397 | $444.50 | $444.50 | $0.00 |
| Judicial College | $0.50 | $0.50 | $0.00 |
| Building Fund Fee | $25.00 | $25.00 | $0.00 |
| | $0.00 | | |
| JSC | $27.50 | $27.50 | $0.00 |
| Request for Trial by | $780.00 | $780.00 | $0.00 |
| | $0.00 | | |
| | $0.00 | | |
| Supreme Court- Proc essing Fee | $10.00 | $10.00 | $0.00 |

the proper-party Plaintiffs.

2.    Made Defendants herein are:

    **A.    SUPPLIER/MANUFACTURER/SELLER/CONTRACTOR DEFENDANTS**

        **1.    EAGLE, INC.**
           **(f/k/a Eagle Asbestos & Packing Co. Inc.)**
           A Louisiana corporation with its principal place of business in New Orleans.
           This Defendant is being sued as a seller/supplier/product manufacturer
           defendant.

        **2.    UNION CARBIDE CORPORATION**
           A New York corporation with a principal business establishment in
           Louisiana. This defendant is being sued as a seller/supplier/contractor
           defendant.

        **3.    TAYLOR-SEIDENBACH, INC.**
           A corporation duly organized, created, and existing under and by virtue of
           the laws of the state of Louisiana, with its principal place of business in New
           Orleans, Louisiana.

VERIFIED
8-4-22

1

EXHIBIT A

This Defendant being sued as a seller/supplier/contractor defendant.

4.    **LIBERTY MUTUAL INSURANCE COMPANY, as insurer of Wayne Manufacturing Company)**
This Defendant being sued as a seller/supplier/contractor defendant.

5.    **INTERNATIONAL PAPER COMPANY (as successor to U.S. Plywood)**
This Defendant being sued as a seller/supplier/product manufacturer defendant.

6.    **3M COMPANY (individually and f/k/a Minnesota, Mining & Manufacturing Company, a/k/a 3M)**
This Defendant being sued as a seller/supplier/product manufacturer defendant.

7.    **VIACOM CBS, INC.**
This Defendant being sued as a seller/supplier/product manufacturer defendant.

8.    **GOULDS PUMPS (IPG), INC.**
This Defendant being sued as a seller/supplier/product manufacturer defendant.

9.    **GENERAL ELECTRIC COMPANY**
This Defendant being sued as a seller/supplier/product manufacturer defendant.

10.   **CRANE CO.**
This Defendant being sued as a seller/supplier/product manufacturer defendant.

11.   **UNIROYAL, INC.**
This Defendant being sued as a seller/supplier/product manufacturer defendant.

12.   **METROPOLITAN LIFE INSURANCE COMPANY**
This defendant is being sued as a fraud defendant

13.   **FOSTER WHEELER ENERGY COMPANY**
This Defendant being sued as a seller/supplier/product manufacturer defendant.

14.   **HOPEMAN BROTHERS, INC.**
This Defendant is being sued as seller/supplier/contractor defendant.

15.   **CLARK-RELIANCE CORPORATION**
This Defendant being sued as a seller/supplier/product manufacturer defendant

16.   **W&O SUPPLY, INC.**
This Defendant being sued as a seller/supplier/product manufacturer defendant

17.   **NEW ORLEANS FLOORING SUPPLY, INC.**
This Defendant being sued as a seller/supplier/product manufacturer Defendant

18.   **ORION SOUTH, INC. (f/k/a Reagan Equipment Company)**
This Defendant being sued as a seller/supplier/product manufacturer Defendant

19.  **THE WILLIAM POWELL COMPANY**
This Defendant being sued as a seller/supplier/product manufacturer Defendant.

20.  **BLUEWATER RUBBER & GASKET CO.**
This Defendant being sued as a seller/supplier/product manufacturer defendant.

21.  **RJ REYNOLDS TOBACCO COMPANY**
This defendant is being sued as a
seller/supplier/product/manufacturer/tobacco defendant

3.  Sandra Bridges was diagnosed with lung cancer on or about March 13, 2020, ultimately dying as a direct result of her malignancy on August 8, 2021, which was caused by and a consequence of her exposure to asbestos and cigarette smoking resulting from her addiction to nicotine in cigarettes manufactured and/or sold by RJ Reynolds Tobacco Company, as set forth herein. Plaintiffs' wrongful death actions are timely, as suit is filed within one year of Sandra Bridges' asbestos-related death. As a direct and proximate result of the delictual conduct of the defendants, Plaintiff Sandra Bridges has recently contracted and died from lung cancer and has suffered physically, financially, mentally, and emotionally.

4.  Asbestos exposure and cigarette smoking are both well-established causes of lung cancer. Cigarette smoking and asbestos exposure act "synergistically" and act in combination to cause lung cancer in persons, such as Sandra Bridges, who regularly smoked cigarettes and were regularly exposed to asbestos. Cigarette smoking and asbestos exposure acted as concurrent causes in producing Sandra Bridges' lung cancer. Both cigarette smoking and asbestos exposure were substantial causes of Mrs. Bridges' lung cancer.

5.  The defendants, Eagle, Inc., New Orleans Flooring Supply, Inc., and Taylor-Seidenbach, Inc., are domestic corporations with their registered offices located in Orleans Parish. Plaintiff was exposed to products, distributed, and installed by the above-referenced defendant at the work sites in paragraph two which her husband, Lloyd Bridges, Sr., brought home on his work clothes from Avondale Shipyard, thus exposing Sandra Bridges to asbestos. Plaintiff specifically alleges that these products, in combination with other asbestos-containing products, caused her asbestos-related injuries.

6.  Orleans Parish is a proper venue for this matter pursuant to La. Stat. Ann. 22:1269(B)(1) because events, accident, or injury occurred in Orleans Parish. Orleans Parish is a proper venue pursuant to La. Code of Civil Procedure article 74 as the parish where the wrongful conduct occurred and where the damages were sustained.

7.      Orleans Parish is a proper venue for this matter pursuant to Louisiana Code of Civil Procedure Article 42 and 74  because the Defendants Taylor-Seidenbach, New Orleans Flooring Supply, Inc., and Eagle, Inc., are domestic corporations licensed to do business in this State and have designated their primary business office and/or primary place of business in Louisiana as Orleans Parish, and because the exposure of Plaintiff originated in Orleans Parish.

8.      Each of the Defendants knew or should have known that its individual actions would combine to cause the injuries to Plaintiff

9.      The actions of each of the Defendants are a proximate cause of Plaintiff's injuries. As a result, all Defendants are jointly and solidarily liable for the damages caused by their combined actions.

10.     Each of the Defendants contributed with Eagle, Inc., New Orleans Flooring Supply, Inc., and Taylor-Seidenbach, Inc. to Plaintiff's exposures as stated herein. Each of the defendants is liable in solido to the Plaintiff. Thus, venue proper for these defendants is proper for all defendants pursuant to Louisiana Code of Civil Procedure articles 42 and 73.

11.     Metropolitan Life Insurance Company agreed and conspired with miners, manufacturers, inspectors, sellers, distributors, and installers of asbestos and asbestos containing products and intentionally suppressed and withheld information regarding the hazards of asbestos. Metropolitan Life Insurance Company, along with others in the asbestos industry, negligently manipulated, misrepresented, ignored, censored, and fraudulently controlled information which led to asbestos exposure and harm to workers and their family members like the plaintiffs here.

12.     The damages sought by the Plaintiff, exclusive of interest and costs, exceed the minimum jurisdictional limits of the court.

13.     Plaintiff specifically disclaims any cause of action or recovery for any injuries caused by any exposure to asbestos dust that occurred in, or on the grounds of, a federal enclave.  Plaintiff also disclaims any cause of action or recovery for any injuries resulting from any exposure to asbestos dust caused by any conduct, action, acts or omissions of any and all federal officers, or committed at the direction of an officer of the United States Government.

14.     Sandra Bridges was exposed to injurious levels of asbestos through her husband, Lloyd Bridges, Sr. Sr.'s work at Huntington Ingalls/Avondale in and/or around their New Orleans area shipyards from approximately 1970-1985. While employed at the aforementioned locations, Lloyd Bridges, Sr. used, handled, and/or was in the vicinity of others using and/or handling asbestos

4

and/or asbestos-containing products at these facilities, dangerously high levels of asbestos fibers escaped into the ambient air of the work place, resulting in Mr. Bridges being exposed to such asbestos and/or asbestos-containing products and subsequently exposing Decedent to same. Mr. Bridges would continuously work with and around others scraping asbestos containing gaskets supplied by defendants in paragraph 2 while working at Avondale, and Mr. Bridges worked around Hopeman Brothers employees who exposed him to substantial asbestos containing products while performing work at Avondale. Mr. Bridges then brought all of these clothes home with him and exposed Mrs. Sandra Bridges to asbestos.

15.      Sandra Bridges was exposed to the asbestos fibers through interaction with her husband and from her husband's vehicle and clothing, which he wore home from work and that she subsequently laundered.

16.      In connection with the Decedent's exposure to asbestos from her work and her husband's work at the sites identified in Paragraph 14, from approximately 1970-1985, and through her work and her personal contact with her husband and from the dust she breathed while laundering her husband's clothes, the Decedent suffered exposure to asbestos and asbestos-containing products designed, manufactured, sold, supplied, used and/or maintained at these sites by the Defendants.

17.      Before and during Sandra Bridges' exposure periods, each of the defendants designed, tested, evaluated, manufactured, packaged, furnished, stored, handled, transported, installed, used, supplied and/or sold asbestos-containing products for use at, including but not limited to, each of the facilities listed in Paragraph 14 from which the Plaintiff was exposed to asbestos-containing products, materials, insulation, and products that contained fibrous, incombustible, chemical-resistant mineral substances commonly called "asbestos".

18.      When inhaled or otherwise ingested, asbestos causes irreparable and progressive lung damage that can manifest itself as asbestos-related pleural disease, asbestosis, mesothelioma, pulmonary and bronchogenic carcinoma, gastrointestinal cancer, cardiac problems, other lung diseases, pneumoconiosis, and various other injuries.

19.      Each of the defendants knew or should have known through industry and medical studies, the existence of which was unknown to the Plaintiff of the health hazards inherent in the asbestos-containing products they were selling and/or using. Instead of warning the Plaintiff, and the general public about these dangers, the defendants ignored or concealed such information, or condoned

such concealment, in order to sell or use asbestos or asbestos-containing products to avoid litigation by those who were injured from asbestos inhalation.

20.     Because of the latency period between exposure to asbestos and the onset of cancer, and because of the concealment by some defendants of the causes and effects of exposure to asbestos, the Plaintiff did not know nor could he have reasonably known that Plaintiff's injuries were caused by his asbestos exposure until recently, which occurred less than one year prior to the filing of the instant Petition for Damages. Further, Plaintiff only recently discovered her injuries, not more than one year preceding the filing of this Original Petition for Damages.

21.     In connection with her husband's work at the aforementioned job sites, the Plaintiff was exposed to and inhaled or otherwise ingested significant quantities of asbestos, having neither knowledge or reason to believe that asbestos was dangerous.

## TOBACCO ALLEGATIONS

22.     Sandra Bridges was born on March 4, 1957, and began smoking cigarettes at approximately age 19 in 1976. When Mrs. Bridge began, and before Mrs. Bridges quit smoking cigarettes, there were no warnings regarding the link between smoking and lung cancer on cigarette packs or cigarette advertisements. In fact, defendants 'cigarette advertisements during the relevant time period hereto boasted and promoted the positive health effects of smoking to customers such as Mrs. Bridges.

22.     Because Mrs. Bridges was exposed to both the asbestos-containing products and tobacco products in combination from 1976 – 1982, the substantive law at the time of her exposure governs this action.

23.     Plaintiff also avers that RJ Reynolds Tobacco Company had a duty to disclose to the American public, including Sandra Bridges, all material facts about the health hazards of smoking cigarettes, including their highly addictive qualities. RJ REYNOLDS TOBACCO COMPANY owed a legal duty to disclose all material facts regarding the health effects of cigarettes, including addiction, which they knew, or in the exercise of ordinary care, should have known were deleterious and highly harmful to Decedent's health and well-being. RJ REYNOLDS TOBACCO COMPANY also owed this legal duty to disclose material facts because they affirmatively undertook this duty by voluntarily and repeatedly communicating with the American public about smoking and health effects, including addiction.

24.     RJ REYNOLDS TOBACCO COMPANY, directly and through their trade associations, including but not limited to, the Tobacco Industry Research Committee (TIRC), Council for Tobacco Research (CTR) and the Tobacco Institute (TI) repeatedly made representations and statements, from the 1950s through the 2000s, about the safety of cigarettes and their effect on human health and the issue of nicotine addiction. RJ REYNOLDS TOBACCO COMPANY, both directly and through their trade associations, including but not limited to the TIRC, CTR and TI, from the 1950s through the 2000s, repeatedly and consistently made public statements, inter alia: (1) denying that cigarettes were hazardous; (2) denying that cigarettes caused lung cancer or any other serious illness; (3) denying that cigarettes contained any harmful ingredients; (4) denying that the ingredients of cigarettes included nicotine and other chemicals were manipulated to cause people to continue to smoke or initiate or sustain addiction; (5) denying that nicotine in cigarettes is addictive. RJ REYNOLDS TOBACCO COMPANY failed to timely and adequately warn Sandra Bridges of the dangerous characteristics and serious health hazards associated with tobacco.

25.     RJ REYNOLDS TOBACCO COMPANY failed to place timely and adequate warnings to consumers, including Sandra Bridges, of the health hazards, including addiction and lung cancer, of smoking cigarettes, on their tobacco products, on the containers of said products, and any and all packing of tobacco products sold RJ REYNOLDS TOBACCO COMPANY, prior to 1984.

26.     As a proximate result of RJ REYNOLDS TOBACCO COMPANY's failure to exercise reasonable care, Sandra Bridges developed lung cancer and other personal injuries and Plaintiffs' are entitled to recover the damages sought in this complaint for Defendants' negligence.

27.     RJ REYNOLDS TOBACCO COMPANY had a duty to know the dangerous and hazardous qualities of its products. Sandra Bridges was exposed to RJ REYNOLDS TOBACCO COMPANY's hazardous products when she smoked RJ Reynolds Tobacco Company's Kool brand menthol cigarettes from 1976 – 1982. Plaintiffs would show that the defective condition of these products as unreasonably dangerous to normal use, that cigarettes were in this defective condition when they were smoked by Sandra Bridges, the tobacco defendant's cigarettes, in connection with Sandra Bridges' exposure to asbestos, caused her lung cancer, and RJ REYNOLDS TOBACCO COMPANY was aware and could reasonably anticipate that the nicotine and other chemicals in their products would cause lung cancer.

28.     RJ REYNOLDS TOBACCO COMPANY, and their predecessors, were engaged in the business of manufacturing and selling tobacco products, without substantial change in the condition in which they were sold, and were a producing cause of the illnesses, disabilities, and damages of Sandra Bridges.

29.     RJ REYNOLDS TOBACCO COMPANY's cigarettes were hazardous to normal use, meaning all intended and foreseeable uses in which the consumer, the only use being to smoke the cigarettes, thereby inhaling the tobacco, nicotine and chemicals into ones' lungs, such as Sandra Bridges did on numerous occasions between approximately 1976 - 1982. Sandra Bridges was unaware of these hazards and defects in RJ REYNOLDS TOBACCO COMPANY's cigarettes which made them unsafe to consume.

## GENERAL NEGLIGENCE ALLEGATIONS- ALL DEFENDANTS

30.     On information and belief, all of the Defendants identified in paragraph 2 above were responsible to provide Plaintiff's husband with warnings concerning hazardous conditions at their sites and/or their use of hazardous materials, and generally to provide Plaintiff and her husband with safe premises in order to protect life health, safety, and welfare of Plaintiff, and had the following responsibilities:

A.      Inspection, approval, and supervision of these various premises for hazards and vices that may present a hazard to Plaintiff;

B.      To see that proper safety rules were adopted, promulgated, and enforced concerning the use and handling of hazardous materials that may present harm to people on the premises;

C.      To see that workers performed their duties pertaining to their work in a proper, safe and workmanlike manner so as not to present an unreasonable risk of harm to the workers, as well as Plaintiff;

D.      To see that the Defendants and their employees used safe and sound principles and practices in their work involving the use and storage of hazardous materials;

E.      To make health and hygiene decisions on any and all questions regarding the use of respiratory protection devices involving the use and storage of hazardous materials;

F.      To keep abreast of state-of-the-art-knowledge, as it pertains to the dangers of asbestos inhalation, involving the use and storage of hazardous materials;

G.     To provide adequate warnings, safety equipment, ventilation, and breathing apparatus, where such was unnecessary, in order to prevent Plaintiff from being harmed by exposure to asbestos in the environment in which her husband was required to be present;

H.     To make certain that Plaintiff and Plaintiff's husband, was provided a safe environment, free from excess asbestos dust inhalation and operations free from excess asbestos dust;

I.      To comply with applicable state and federal regulations regulating exposure to asbestos, including but not limited to, those regulations regulating exposure to asbestos, including but not limited to, those regulations promulgated by the U.S. Department of Labor pursuant to the Walsh/Healy Act and Occupational Safety and Health Act.

31.    Not only did defendants have the duties and responsibilities set forth in the foregoing paragraph, but they did actually undertake on an operational basis to perform said duties and fulfill said responsibilities, and they negligently failed to carry out those undertakings and assumed duties in the manner asserted in the paragraph below, and on information and belief, Defendants knew of the dust laden atmosphere in which Plaintiff and Plaintiff's husband was required to enter, and work, which was damaging and dangerous to Plaintiff and any other family member coming into contact with Lloyd Bridges, Sr.' work clothing, and each knew or should have known of the dangers to Plaintiff's health posed by her husband's working in an atmosphere polluted with asbestos dust without proper protection or warnings.  Plaintiff alleges that these defendants knew or should have known that the lung cancer sustained by Plaintiff could have been avoided by the use of adequate ventilation, warnings, packaging and safety equipment.

32.    On information and belief, Defendants negligently failed in the performance of their responsibilities and/or actual undertakings to provide Plaintiff's and her husband, Lloyd Bridges, Sr., with safe premises and operations in the following particulars:

A.     Failing to properly ventilate the area in which Plaintiff and Plaintiff's husband, Lloyd Bridges, Sr., were required to enter in connection with his work;

B.     Failing to warn or provide proper safety appliances, including but not limited to respirators, air-fed hoods, etc. for Plaintiff and Plaintiff's husband, Lloyd Bridges, Sr.' use;

C.     Failure to institute safety procedures and plans for the adequate protection of Plaintiff and Plaintiff and Plaintiff's husband, Lloyd Bridges, Sr.;

D.     Failing to warn Plaintiff and Plaintiff's husband, Lloyd Bridges, Sr., of the dangers posed by the polluted atmosphere in which he was required to work including, but not limited to the risk of asbestosis, pleural disease, lung cancer, mesothelioma, other cancers, and the carcinogenic effect of the risk of mesothelioma caused by asbestos exposure to persons from the handling and use of asbestos;

E.     Failing to enforce applicable safety rules after such rules were actually adopted;

F.     Failing to keep abreast of the scientific and engineering knowledge regarding the dangers of, and protection against, the occupational exposure to asbestos;

G.     Failing to properly supervise operations;

H.     Failing to provide proper and safe laundry services to workers;

I.     Failure to prevent workers from taking asbestos dust home on their clothes;

J.     Commencing and continuation of operations which were under their control and supervision when they knew or should have known that such operations cause Plaintiff and her husband, Lloyd Bridges, Sr., to be exposed to asbestos dust, without protections;

K.     Failing to abide by applicable state and federal regulations regulating the premises' exposure to asbestos, including but not limited to, those regulations promulgated by the U. S. Department of Labor, pursuant to the Walsh/Healy Act and the Occupational Safety and Health Act;

L.     Failing to measure the levels of asbestos dust in the premises working environment.

33.    The negligence of these defendants was a substantial factor and contributed in causing damages to Plaintiff.

## NEGLIGENCE AND STRICT LIABILITY AGAINST MANUFACTURER/SELLER/SUPPLIER/CONTRACTOR DEFENDANTS

34.    The Defendants identified in Paragraph 2B above as manufacturers, sellers, contractors and/or suppliers of asbestos products were engaged in or materially participated in the business of manufacturing, or assisted in the manufacturing, or facilitating the manufacturing of asbestos products, or representing themselves as manufacturers of asbestos products, or are professional vendors of asbestos or asbestos-containing products, or as a contractor, which were expected to and did reach the Plaintiff's husband's job sites causing Plaintiff to be exposed to them.

35.    The products manufactured, distributed, supplied, sold and/or used by these defendants were defective, and unreasonably dangerous per se to Decedent and husband, Lloyd Bridges, Sr.,

who was an intended and foreseeable user and bystander that was exposed to these products. These defects include, without limitation, the following:

A.      the manufacture, sale, supply and use of products that are unreasonably dangerous, or unreasonably dangerous per se;

B.      manufacture, sale, supply and use of products that possess inherent and known properties that make them unreasonably dangerous by presenting high potential for causing serious injury, such as respiratory disease, cancer, and other health problems to those who would be foreseeably exposed to them doing the laundry and having contact with the clothing worn by Ora Bridges' husband in the Decedent's husband's trade;

C.      lack of warning or of sufficient warning of the hazards these products would present in the course of their normal foreseeable use or intended use;

D.      lack of safety instructions or of sufficient safety instructions for eliminating or reducing the health risks associated with the intended use of these products;

E.      failure of defendants to inspect these products to assure sufficiency and adequacy of warnings and safety cautions;

F.      failure to test or adequately test these products for defects or hazards that they could present to the intended or foreseeable users and bystanders;

G.      failure to truthfully report or adequately report the results of product testing, and medical studies associated with foreseeable hazards of these products by intended or foreseeable users and bystanders;

H.      failure to prevent Decedent's husband from taking dusty work clothes home;

I.      failure to properly design these products where the nature of the product did not require use of asbestos mineral or where alternate, equally suitable substances were readily available;

J.      defects in the composition and construction of these products;

K.      failure to recall these products manufactured, sold and supplied;

L.      failure to properly package these products so that they could be safely transported, handled, stored or disposed of;

M.      over-warranting the safety of these products;

N.      are liable to Plaintiff in strict liability for things in their guard, possession, custody or control, pursuant to article 2317 of the Louisiana Civil Code that have caused harm to Plaintiff.

11

36.     The defective conditions of defendants' products and fault, as noted above, are a cause of Plaintiff's injuries and damages complained of herein.

37.     Plaintiff also alleges that each and every one of the foregoing defendants were also negligent in engaging in the substandard conduct enumerated above and that this negligence was also a proximate cause of Plaintiff's injuries.

## DAMAGES

38.     The conduct of Defendants, as alleged hereinabove, was a direct, proximate and producing cause of the damages resulting from asbestos-related lung cancer of the Decedent, and of the following general and special damages including:

A.     The conscious physical pain and suffering and mental anguish sustained by Decedent (past, present and future);

B.     The disfigurement suffered by Decedent;

C.     The physical impairment suffered by Decedent (past, present and future);

D.     Reasonable and necessary medical expenses incurred by Decedent;

E.     All past, present and future lost earnings and loss of earning capacity;

F.     Loss of quality of life;

G.     All forms of relief or categories of damages allowed by Louisiana law for survival and wrongful death claims, against parties the law allows such claims to be alleged against, with interest from the date of injury until paid, plus costs of these proceedings.

39.     Plaintiff demands a trial by jury on all issues.

**WHEREFORE,** Decedent demands judgment against the Defendants, and each of them, jointly, severally and/or *in solido* for all damages, for their costs expended herein, for judicial interest from the date of judicial demand, and for such other and further relief, both at law and in equity, to which Decedents may show themselves justly entitled.

**Boling Law Firm, LLC**

Jeremiah Boling (Bar No. 34249)
Caroline Boling (Bar No. 34494)
Benjamin Rumph (Bar No. 37851)
LaCrisha McAllister (Bar No. 39976)
541 Julia Street, Suite 300
New Orleans, LA 70130
Telephone: (504) 615-6309
Fax: (504) 369-3421

12

jboling@bolingfirm.com
cboling@bolingfirm.com
brumph@bolingfirm.com
lmcallister@bolingfirm.com
**Attorneys for Plaintiffs**

**PLEASE SERVE THE FOLLOWING DEFENDANTS WITH A COPY OF PLAINTIFFS' PETITION FOR DAMAGES:**

**EAGLE, INC. f/k/a EAGLE ASBESTOS & PACKING CO. INC.**
Through its Registered Agent:
Susan B. Kohn
Simon, Peragine, Smith & Redfearn
1100 Poydras St., 30th Floor
New Orleans, La 70163

**TAYLOR-SEIDENBACH, INC.**
Through its agent for service:
Robert I. Shepard or Hal Shepard
731 S. Scott Street
New Orleans, LA 70119

**UNION CARBIDE CORPORATION**
Through its agent for service:
CT Corporation System
3867 Plaza Tower Drive
Baton Rouge, LA  70816

**LIBERTY MUTUAL INSURANCE COMPANY**
Through the Louisiana Secretary of State:
8585 Archives Avenue
Baton Rouge, LA 70809

**METROPOLITAN LIFE INSURANCE COMPANY**
Through the Louisiana Secretary of State:
8585 Archives Avenue
Baton Rouge, LA 70809

**GOULDS PUMPS (IPG), INC.**
Through its agent for service:
CT Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA  70816

**CRANE CO.**
Pursuant to the Louisiana Long Arm Statute:
100 First Stamford Place
Stamford, CT 06902

**3M COMPANY**
Through its agent for service:
Corporation Service System
501 Louisiana Avenue
Baton Rouge, LA 70802

**GENERAL ELECTRIC COMPANY**
Registered Agent:
CT Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA 70816

**UNIROYAL, INC.**
Via Louisiana Long Arm Statute:
Through their agent for service of process:

14

70 Great Hill Road
Naugatuck, CT 06770

**RJ REYNOLDS TOBACCO COMPANY**
Pursuant to the Louisiana Long Arm Statute:
401 North Main St
Winston-Salem, NC 27101

**FOSTER WHEELER ENERGY COMPANY**
Registered Agent
United Agent Group, Inc.
1070-B West Causeway Approach
Mandeville, LA 70471

**HOPEMAN BROTHERS, INC.**
Pursuant to the Louisiana Long Arm Statute
AWAH Corporation
435 Essex Avenue, Suite 101
Waynesboro, Virginia 22980

**INTERNATIONAL PAPER COMPANY**
Through its agent for service:
CT Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA 70816

**VIACOM CBS, INC.**
Through its agent for service:
Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802

**CLARK-RELIANCE CORPORATION**
Through its agent for service:
CT Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA 70816

**W&O SUPPLY, INC.**
Through its agent for service:
CT Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA 70816

**NEW ORLEANS FLOORING SUPPLY, INC.**
Through its agent for service:
Robert Chehardy
7484 Gen. Haig St.
New Orleans, LA 70124

**ORION SOUTH, INC.**
Through its agent for service:
CT Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA 70816

**THE WILLIAM POWELL COMPANY**
Via the Louisiana Long Arm Statute:
D.R. Cowart
2503 Spring Grove Avenue
Cincinnati, OH 45214

**BLUEWATER RUBBER & GASKET CO.**
Through its agent for service:
Ronald W. Labauve
113 Barrow Street
Houma, LA 70360